IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


PAMELA VUKODINOVICH,           ]
                               ]
        Plaintiff,             ]
                               ]
  v.                           ]   No. 2:11-CV-
                               ]
ALLIED INDUSTRIAL EQUIPMENT,   ]
INC., also d/b/a ALLIED TOYOTALIFT,  ]
                               ]
        Defendant.             ]


**COMPLAINT**

Plaintiff Pamela Vukodinovich files her claims for relief for sex discrimination and retaliation in employment against the defendant and avers:

1. Jurisdiction of the plaintiff's federal law employment claims is conferred upon the Court by the provisions of 42 U.S.C. §1331. The plaintiff's sex/gender discrimination claims and retaliation claims are premised upon the provisions of Title VII of the 1964 Civil Rights Act, as amended, and as codified at *42 U.S.C. §2000e-2, §2000e-3,* and *§2000e-5.*

2. Plaintiff is a white female, 52-years-of-age. She is a resident of Sullivan County, Tennessee. During the time the defendant employer and

1

its managing agents discriminated and retaliated against the plaintiff, she was employed by Allied Industrial Equipment, Inc., d/b/a Allied Toyotalift at its Johnson City branch office as a Customer Service and Sales Representative (CSSR).

3. Allied Industrial Equipment, Inc., hereinafter referred to as "Allied," is a privately owned company which specializes in selling and servicing lift trucks for manufacturing plants in the East Tennessee, Southwest Virginia, and Kentucky areas. The company employs more than seventy individuals. Its corporate office is located at 1640 Island Home Ave., Knoxville, Tennessee 379201814. The defendant's agent for service of process is listed as Russell B. Sharpe, 1640 Island Home Ave., Knoxville, TN 37920-1814. The defendant's General Manager who discriminatorily and retaliatorily discharged the plaintiff on April 17, 2009 was Russell Sharpe. The defendant's corporate sales manager Steve Lowe was instrumental in the company's discrimination against the plaintiff because of her gender.

4. The plaintiff began working for the company in March 1999. Owner Jerry Hatmaker hired the plaintiff to work for the company in parts sales and service sales out of the company's Johnson City branch. As a CSSR, the plaintiff called on existing manufacturing customers who had previously purchased lift trucks from one of several male salesmen which the

company employed at the Johnson City branch. The plaintiff sold parts, training service programs, and equipment service to the company's customers. She was paid commissions on her sales. The male salesmen were paid commissions on the lift trucks and equipment which they sold to local plants.

5. Ms. Vukodinovich performed her sales activities in a more than satisfactory manner and received various company awards and commendations. In July2006, the plaintiff purchased a pre-owned Mercedes Kompressor convertible for her personal use and used it to make calls on company customers. Her automobile purchase provoked immediate sexist reactions from the company's male salesmen and managers. Wes Tankersley, Allied's Comptroller at the time told the plaintiff she should lease a "rent-a-wreck" to drive to sales meetings in Knoxville because the salesmen were upset that she had a Mercedes while they did not. In early 2007, the defendant's new Comptroller, John Garavelli, told the plaintiff when he saw her Mercedes that she must be making "too much money." Garavelli added that he had heard about the plaintiff and her car.

6. As the plaintiff's sales success grew, the defendant's male managing agents and salesmen in Johnson City became more and more jealous. During a sales meeting in Knoxville, the plaintiff commented that her laptop computer was not working. Comptroller Garavelli began cursing the plaintiff

and repeatedly used the "f" word. He did not curse the company's male salesmen. The company has falsely claimed in its EEOC response that the plaintiff routinely used profane language and should not have been offended by the Comptroller's obscene remarks.

7. The defendant hired Steve Lowe to be its corporate sales manager in 2004. In December 2004, Lowe announced the transfer of CSSRs to the company's sales department. Lowe began expressing his hostility toward the plaintiff as the only woman in Allied's sales force shortly thereafter. He began the rude and discriminatory practice of calling the plaintiff a "liar" and fabricating customer complaints about her. Lowe began to overtly discriminate against the plaintiff because of her gender and worked under the table to take the plaintiff's customers away from her and give them and her commissions to the male salesmen who worked out of the Johnson City office. In June 2005, Mike Brown became Allied's after-market manager and the plaintiff's direct supervisor. Lowe continued his discrimination against the plaintiff.

8. The beneficiaries of the defendant's sex discrimination against the plaintiff were male salesman Pharnell Raines and Gene White. Prior to Lowe's being made sales manager, the salesmen and the plaintiff had co-ordinated their sales and service efforts and communicated sales leads to each other. The two salesmen sold new equipment and the plaintiff sold service

and maintenance contracts, training programs, and parts. The sales crew in the defendant's Knoxville office used the same co-operative team effort. Knoxville CSSRs Bryan Barber and Scott Lowe were not treated in the same discriminatory fashion as the plaintiff and did not have their sales taken from them and given to the salesmen. Sales Manager Lowe destroyed the team effort in the Johnson City office and repeatedly and discriminatorily deprived the plaintiff of her earned commissions and sales. The plaintiff complained repeatedly to defendant's General Manager Sharpe about Lowe's continuing disparate treatment.

9. In early 2008, the defendant placed Tom Reeves in the position of Branch Manager of its Johnson City office. Ms. Vukodinovich complained repeatedly to Branch Manager Reeves about Sales Manager Lowe's disparate treatment. The plaintiff had been complaining about the discrimination to after market manager Mike Brown and to company owner Jerry Hatmaker about the discrimination and hostility. Branch Manager Reeves' e-mails to the defendant's corporate office reflected the plaintiff's concerns and complaints. Allied discharged Reeves in early 2009 and the plaintiff reported to Office Manager Jerri Rafalowski. During the plaintiff's tenure as a CSSR, the plaintiff was advised that her sales were higher than the male CSSR sales in the Knoxville office.

10. Sales Manager Lowe allowed and encouraged the two male salesmen to sell the services and parts which the plaintiff was supposed to be selling. The defendant kept the salesmen's poaching the plaintiff's sales and commissions a secret from her. Ms. Vukodinovich learned the male salesmen were taking her sales was when she called on the company customers as she had been doing for years and the customers' representatives told her the salesmen had been soliciting her sales.

11. Sales Manager Lowe insulted the plaintiff because she was a woman and fabricated false accusations about her sales activities. Lowe told the plaintiff early in 2005 that if she ran into a problem selling to a customer to "bat your eyes" or "put on a skirt." The salesmen also openly joked about what sexual favors they imagined she had to give in order to make a new sale.

12. Ms. Vukodinovich complained to company owner Jerry Hatmaker that she had learned Lowe had made false accusations against her to Angus Palm, a local manufacturer to which the plaintiff sold parts and service. The company did nothing about Lowe's vicious and false accusations. Lowe continued his discriminatory campaign to ruin the plaintiff's reputation and to give her accounts to the male salesmen.

13. In late July 2008, the plaintiff negotiated a lift truck rental with JTH Engineering in Jonesborough for $850.00 a month. The customer's

representative told the plaintiff it was considering buying a lift truck and asked her to give a quote. After gathering the quote information from the customer and completing the "Sales Lead Form," the plaintiff turned the sales lead over to salesmen Gene White since new equipment sales were within his purview. When the plaintiff asked White to sign the completed lead form so that she could get her commission, White replied that he had been told by Lowe not to sign anything for her. The defendant's discriminatory maneuver denied the plaintiff her legitimately earned commission.

14. The plaintiff learned in July 2008 that salesmen Raines had asked a customer, Brentag Chemical, to send a written complaint on her to the defendant's Knoxville office. The customer's representative refused and told Ms. Vukodinovich what Raines had asked him to do to her. At an office meeting with Branch Manager Reeves and Raines, the plaintiff asked Raines why he would do such a thing, Raines responded that Sales Manager Lowe had told him to. The plaintiff became so agitated that Branch Manager Reeves drove her to Allied's Knoxville office so she could complain personally to General Manager Sharpe. Reeves called Sharpe from his mobile phone to advise him they were on the way to see him. The plaintiff begged Sharpe to stop Lowe's and Raines' discriminatory sales activities. The plaintiff told Sharpe that Lowe had been lying about her to customers, that Lowe called

7

her a liar every day, and that Lowe was giving her sales to the male salesmen and was keeping her emotionally upset. Sharpe assured the plaintiff that her job was secure and that he would investigate her complaint and take care of it. The plaintiff never heard from Sharpe about the results of his investigation.

15. Defendant's managing agent Lowe continued to interfere with the plaintiff's customers and to belittle her. When customer Jarden Zinc requested that the plaintiff have two new forklifts fitted with speed controllers in October 2008, Manager Lowe claimed that the conversion kits would void the UL ratings and affect the warranties. Lowe objected that the plaintiff could not make the sale. When she called Toyota Technical Support, the plaintiff learned that Lowe had misrepresented the facts to hurt her sale and that the warranties would not be affected by the installation of the speed controllers. Lowe and salesmen Raines then claimed the lift trucks were "government" trucks and could not be converted. In fact, the lift trucks were owned by Jarden Zinc, not by the government, so there was no real problem with putting speed controllers on the two fork lifts. Jarden Zinc announced that it did not want salesmen Raines back on its premises.

16. While Sales Manager Lowe was discriminatorily encouraging and permitting the two male salesmen to encroach on the plaintiff's usual

customer sales in November 2008, he gave Pharnell Raines commission credit for one of two lift trucks which the plaintiff had procured for Allied with Robinett Bag, a Bristol commercial bag manufacturing company. The rental would have resulted in commissions of nearly $600.00 a year each for the plaintiff. The accounting department advised the plaintiff that Raines was being paid her commissions for the rentals per Sales Manager Lowe's directives. In a futile effort to stop the discrimination, the plaintiff forwarded copies of the two rental agreements which had been signed in February 2008 and were recorded in her hand-writing, to the Knoxville office. Sales Manager Lowe continued to discriminatorily insist that one of the rental commissions belonged to Raines.

17. In 2009, Morgan Insulation in Erwin Tennessee asked the plaintiff for a quote on an electric pallet jack. Sales Manager Lowe delayed getting a quote to the plaintiff for four days. Manager Lowe then had salesman Raines visit Morgan Insulation's plant manager and quoted a price which was $700.00 less than he had given the plaintiff to quote so that Allied could deprive the plaintiff of the sale and commission. The customer asked the plaintiff why Raines' quote was so much lower than the plaintiff's had been.

18. When the plaintiff sold an electric pallet jack to DTR

9

Tennessee in Greeneville, the company discriminatorily reduced her commission from $300.00 to $50.00. Sales Manager Lowe had told the plaintiff and the male CSSRs that they each needed to sell six pallet jacks a year and would be paid a $300.00 commission on each jack. But after the plaintiff made the first sale in August 2008, Lowe announced her commission would be only $50.00. After the plaintiff complained, General Manager Sharpe confirmed in a written note that the plaintiff's commission should have been $300.00. Allied never paid the plaintiff the balance of the earned commission.

19. Three weeks before her discriminatory discharge, Ms. Vukodinovich learned that the defendant had been sending male technician Jamie Hughes to visit her usual customers. While Hughes could make some minor sales to companies while he was doing service jobs for them, Hughes had been telling each company that he was the "new CSSR." The plaintiff called General Manager Sharpe and asked if there were anything she needed to know about her job. The plaintiff advised Sharpe that she and Hughes needed to coordinate their sales efforts if indeed Hughes were going to be a CSSR. Sharpe responded that he didn't know anything about the "new CSSR" situation and would check it out. The plaintiff did not hear back from Sharpe before she was discharged.

20. On April 8, 2009, the plaintiff learned that Hughes had told Johnson City customer Johnson Controls that he was the new Allied CSSR while he had sold it a service contract. Then Ferguson Enterprises in Johnson City told the plaintiff had Hughes had announced he was a CSSR when he had signed a forklift service agreement with it. When the plaintiff questioned the defendant's Johnson City office manager Rafalowski what was "going on," the office manager said "let's just get Russ on the phone and let him handle it." When Sharpe answered the call, the office manager told him that she "didn't make enough damn money to deal with [the plaintiff's] b--ls--t drama," threw the phone at the plaintiff, slammed the door, and left the room cursing.

21. The plaintiff asked General Manager Sharpe to please tell her what was going on. Sharpe stated that there were no problems with the plaintiff's job, that he would be up on Friday, April 17, and that they would work it out. The plaintiff later overheard snide comments between salesmen Raines and the office manager to the effect that Sharpe was coming to fire her.

22. The plaintiff met with General Manager Sharpe and Comptroller Garavelli on Friday, April 17, 2009 at the defendant's Johnson City office. Sharpe announced that the company was letting the plaintiff go due to the economy. The Separation Notice which the defendant issued to the

plaintiff stated that she was being laid off "due to restructuring of operations and a resulting reduction of workforce."

23. After Sharpe left the room, Garavelli gave the plaintiff a severance agreement and release of federal employment discrimination claims for her to sign. The plaintiff responded that she would not sign the release and would see an attorney. Gravelli told Ms. Vukodinovich that should she try to sue the company, the company had the best attorneys and would drag her case out. Garavelli added that the plaintiff wouldn't be able to afford an attorney. The male salesmen took over the plaintiff's former customers and accounts. The defendant's assertion to the EEOC that there was no discussion regarding the plaintiff's potential legal action against it during her discharge meeting is not true and is further evidence of Allied's mendacity and cover-up of its sex discrimination and retaliation.

24. In its response to the EEOC, Allied has falsely claimed that the relationship between the plaintiff and its discriminating sales manager Steve Lowe was acrimonious because of the plaintiff's "job performance. " Contrary to the defendant's current claim, the defendant's direct supervisors did not criticize the plaintiff job performance during her employment. Sales manager Lowe's criticisms of the plaintiff were factually unfounded and were discriminatory. The plaintiff received various Toyota performance awards.

12
Case 2:11-cv-00375-JRG-DHI   Document 1   Filed 12/10/11   Page 12 of 15   PageID #: 12

That the plaintiff was a female who was performing an exceptional level was the reason the defendant's male managers and salesmen were jealous of her and discriminated against her.

25. The plaintiff avers that she was discriminated against and retaliated against because she was a woman working in a man's world at Allied. The plaintiff was the butt of sexist jokes and male temper tantrums. The defendant's Sales Manager misrepresented the plaintiff's sales efforts to her customers and tried to get at least one customer to make a written complaint against her. With Steve Lowe as its Sales Manager, the defendant obstructed the plaintiff's sales, denied her earned sales commissions, and denied her sales contact information while it demanded that the plaintiff share her sales leads with the male salesmen on a one-sided basis. The defendant did not treat its male CSSR's in the same discriminatory fashion. Allied gave commissions which the plaintiff had earned to its male salesmen. When the plaintiff complained about the discriminatory and disparate treatment, the company's management ignored the plaintiff's objections and complaints, continued its discriminatory patter by secretly promoting a male technician to the plaintiff's CSSR position just weeks before it discriminatorily and retaliatorily discharged her.

26. Allied initiated and perpetuated a continuing pattern of

repeated gender discrimination and harassment against the plaintiff and thereby created a hostile work environment. The company's pattern of discrimination and retaliation violated the provisions of *42 U.S.C. §2000e-2* and *§2000e-3* and was deliberate, intentional, malicious, and in reckless disregard of the plaintiff's federally protected rights. The pattern of discrimination and retaliation was objectively and subjectively hostile and made it extremely difficult for the plaintiff to perform her job duties. Though she repeatedly complained about the discrimination, the defendant continued the hostile work environment, The discriminatory hostile work environment diminished the plaintiff's commissions. The plaintiff is entitled to an award of compensatory damages and to an award of punitive damages from the defendant employer.

27. The defendant's discrimination and retaliation caused the plaintiff to suffer stress and anxiety. Her enjoyment of life has been diminished and her earning capacity has been significantly impaired. Ms. Vukodinovich has lost wages and benefits and will continue to lose income in the future. The plaintiff is entitled to reinstatement to her CSSR position, to the return of her former accounts, and to an order requiring the defendant employer to stop harassing her and discriminating against her.

28. The plaintiff has filed discrimination and retaliation charges against the defendant with the EEOC, has been issued her right-to-sue letter,

and has exhausted her administrative remedies.

WHEREFORE, the plaintiff demands:

1. Judgment against the defendant for all compensatory damages to which she is entitled under Title VII and 42 U.S.C. §1981a.

2. Judgment against the defendant for all punitive damages to which she is entitled under Title VII and 42 U.S.C. §1981a.

3. An award of lost wages and lost employment benefits.

4. Reinstatement to her former CSSR position with appropriate injunctive relief to prevent continuing sex discrimination and retaliation.

5. Alternately, an award of front pay.

6. A jury to try her claims.

7. An award of attorney's fees as the prevailing party under federal law.

8. Such other relief to which she may be entitled.

s/ C. R. DeVault, Jr.
CHARLTON R. DEVAULT, JR.
TN BPR #000428
102 Broad Street
Kingsport, Tennessee
(423) 246-3601

ATTORNEY FOR THE PLAINTIFF